# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

James B. Strunk,
      Petitioner,


      vs.                            Case No. 1:07cv862
                                      (Spiegel, S.J.; Black, M.J.)


Warden, Chillicothe Correctional
Institution,
      Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 2); respondent's return of writ with exhibits, which include the transcript of the state trial proceedings (Doc. 11); and petitioner's response to the return of writ (Doc. 14).

## Factual And Procedural Background

On July 18, 2005, the grand jury of Warren County, Ohio, returned an eight-count indictment charging petitioner with three counts of receiving stolen property in violation of Ohio Rev. Code § 2913.51(A) (Counts 1-3); three counts of money laundering in violation of Ohio Rev. Code § 1315.55(A)(5) (Counts 4-6); one count of aggravated funding of drug trafficking in violation of Ohio Rev. Code § 2925.05(A)(3) (Count 7); and one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1) (Count 8). (Doc. 11, Ex. 1).

After a jury trial, petitioner was acquitted of the offenses charged in one of the receiving stolen property counts (Count 1) and the aggravated funding of drug trafficking count (Count 7); he was found guilty, however, on the six remaining charges (Counts 2-6, 8). (*Id.,* Ex. 3). On March 21, 2006, petitioner was sentenced to terms of imprisonment totaling 10 years.[1] (*Id.,* Ex. 4).

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. 5). With the assistance of new counsel, petitioner filed an appellate brief raising the following three assignments of error:

> 1. The trial court erred by failing to instruct the jury on the affirmative defense of entrapment, except on Count VII, where there was substantial evidence to support the defense.
>
> 2. The jury's conviction . . . on Counts Two and Three, receiving stolen property, was against the manifest weight of the evidence when Strunk was not "explicitly" informed that property was stolen.
>
> 3. The trial court erred by rendering a sentence which constituted, at least in part, punishment for exercising Strunk's right to a jury trial.

(*Id.*, Ex. 6).

On February 20, 2007, the Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 10). In its decision, the state appellate court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] regarding the incidents resulting in

---

[1] Specifically, the court imposed consecutive prison terms of six months each on the two convictions for receiving stolen property and three years for each of the three money laundering offenses; these sentences were to be served concurrently with a five year prison sentence for engaging in a pattern of corrupt activity. (*See* Doc. 11, Ex. 4).

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

petitioner's convictions:

Appellant is the owner of a construction business.  In early May 2005, appellant was asked by an employee of his business if he was interested in purchasing a used 42-inch plasma television.  Appellant purchased the television for $1,300.  At the same time, the Springboro Police Department was investigating a theft of a television, laptop computer and other items from a residence in Springboro.  Detective Tim Parker of the Springboro Police Department identified appellant's employee as a suspect and interviewed him about the theft.  The employee admitted that he stole the television and stated that he had sold it to appellant.  The employee volunteered to wear a wire for the police to get appellant to make a statement that he knew the television was stolen.

Parker contacted the Warren County Drug Task Force to assist with the operation since appellant lived outside of Parker's jurisdiction and the task force had the proper undercover equipment.  Working under cover, Det. Dan Schweitzer of the task force and the informant drove to appellant's residence on May 10, 2005.  The informant went into appellant's residence to obtain the evidence while Det. Schweitzer remained in the car.  The informant returned to the car and indicated to Det. Schweitzer that he had been successful in recording appellant's statement.  The informant then indicated that appellant might be interested in buying a Rolex watch.  Appellant was standing in his garage and wa[]ved for Det. Schweitzer to speak with him.  The informant introduced Det. Schweitzer as Jason Miller, the man who helped him get the television and "the guy who can get you whatever you need."  Appellant then took the men into his house to show them where he installed the television.  Following a conversation, appellant indicated that he was not interested in a Rolex watch but would be interested in new furniture for his house.  At the end of the conversation, Schweitzer told appellant he would get back to him about furniture.

On May 19, the detective and the informant returned to appellant's residence.  They delivered a brand new loveseat, still wrapped in plastic with a tag for $1,155.  Appellant wrote Det. Schweitzer a $200 check for the loveseat.  The men then sat around appellant's garage to

talk. Appellant stated that he would be interested in more furniture. Det. Schweitzer also brought photographs of an RTV and a tractor to see if appellant would be interested, but appellant declined. Appellant proceeded to tell a story from when he was in college where appellant claimed to have given a friend $20,000 for drug trafficking and received $40,000 a few days later in return. Det. Schweitzer then asked if appellant would be interested in participating in that type of activity again, but the conversation was dropped.

On May 27, Det. Schweitzer returned to appellant's residence to further discuss funding of a drug transaction, but no definitive arrangements were made. Appellant though did request another loveseat and also a bedroom suite. On May 31, Det. Schweitzer went to appellant's residence once again. The two talked in more detail about a possible drug transaction. Appellant then told Det. Schweitzer a story about his former employment overseas. He stated that he would have his salary deposited into a Cayman Island bank account and would withdraw only $9,000 at a time to not raise any "red flags." Appellant also described that this strategy could be used to "wash" up to $100,000 per year through his construction business.

On June 17, Det. Schweitzer delivered the second loveseat. It was also brand new with a $1,169 price tag. Appellant's wife wrote a $300 check for the loveseat. Det. Schweitzer once again brought up the drug transaction, but appellant did not seem interested. The men once again discussed money laundering.

On June 20, the men met again at appellant's residence and talked in greater detail about money laundering. Appellant stated that he had laundered money in the past. Det. Schweitzer proposed that he would give appellant $10,000 cash and, in return, appellant would write a check for $9,000. Appellant stated that all of the transactions would be filtered through his business and appellant would write off the transactions as if Schweitzer were a sales consultant. Appellant also requested that Det. Schweitzer complete a 1099 tax form to make the transactions appear legitimate.

On June 21, the first money laundering transaction occurred. Det. Schweitzer gave appellant $10,000 in pre-recorded bills and appellant

wrote a $9,000 check, which the detective cashed. Det. Schweitzer
informed appellant that the money was coming from his friend, the
"weed man." The second money laundering transaction took place on
June 28 and Det. Schweitzer once again proposed a drug transaction.
On July 7, appellant provided the detective with a W-9 tax form to fill
out to legitimize the appearance of the transactions. On July 13, a
third money laundering transaction took place. During this
transaction, appellant wrote a $9,000 check, but also gave the $10,000
cash back to Det. Schweitzer to fund a drug deal. Det. Schweitzer
returned to appellant's residence on July 19 to give $20,000 to
appellant for the drug deal and appellant was arrested afterward.

(*Id.,* pp. 1-4).

Petitioner filed a timely *pro se* appeal from this decision to the Supreme
Court of Ohio, asserting essentially the same claims that he had raised below to the
Ohio Court of Appeals.[3] (*See id.,* Exs. 11-12). On July 25, 2007, the state supreme
court denied petitioner leave to appeal and summarily dismissed the appeal "as not
involving any substantial constitutional question." (*Id.,* Ex. 14).

Petitioner filed the instant federal habeas corpus petition in October 2007.[4]
(*See* Doc. 2). He alleges as grounds for relief the same three claims that he
presented as propositions of law in his memorandum in support of jurisdiction to
the Supreme Court of Ohio. (*See id.*, "Memorandum In Support," pp. 1, 4, 5).

In the return of writ, respondent contends that petitioner has waived the
federal constitutional claim alleged in Ground One due to his procedural default in
the state courts, and that in any event, petitioner is not entitled to relief based on
the merits of his claim challenging the trial court's refusal to give an entrapment
instruction. (Doc. 11, Brief, pp. 8-13). Respondent further argues that petitioner is
not entitled to relief based on the merits of his remaining grounds for relief

---

[3] It is noted, however, that instead of arguing as he had on direct appeal that his two
convictions for receiving stolen property were against the manifest weight of the evidence,
petitioner asserted in his memorandum in support of jurisdiction to the Supreme Court of Ohio
that these convictions were "not supported by sufficient evidence." (*See* Doc. 11, Ex. 12).

[4] The petition was originally filed in the Eastern Division of Ohio's southern federal
judicial district  The case was transferred to this Court for all further proceedings on October 15,
2007. (*See* Doc. 3).

challenging the sufficiency of evidence and his sentence.  (*See id.,* pp. 13-19).

## OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One Challenging The Court's Failure To Instruct About Entrapment, Which Was Raised Only As An Issue Of State Law In The State Courts

In Ground One of the petition, petitioner alleges that the trial court erred when it refused to instruct the jury on the affirmative defense of entrapment except with respect to the aggravated-funding-of-drug-trafficking charge set forth in Count Seven of the indictment.  (Doc. 2, "Memorandum In Support," p. 1). Petitioner asserts that the court erred because he introduced "substantial evidence of entrapment on all counts" at trial.  (*Id.,* p. 2).

As an initial matter, the Court is precluded from reviewing this claim to the extent petitioner contends he is entitled to relief based on the trial court's alleged misapplication or misinterpretation of Ohio law on the affirmative defense of entrapment.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Therefore, a federal habeas court can only consider whether the alleged error violated petitioner's federal constitutional right to due process.  However, as respondent contends in the return of writ (*see* Doc. 11, Brief, pp. 8-11), it appears petitioner has waived any such constitutional claim because he failed to present the federal issue to the Ohio courts.

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson*

6

*v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  If he fails to do so, he may have waived the claims for purposes of federal habeas corpus review.  *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).  This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).  A claim will be considered "fairly presented" without citation to chapter and verse of the Constitution only if the presentation of the claim was "likely to alert the court to the claim's federal nature."  *Nadworny v. Fair,* 872 F.2d 1093, 1097 (1st Cir. 1989) (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 192 (2nd Cir. 1982) (en banc)).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the court of the claim's federal nature.  *Id.* Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326 (quoting *Daye,* 696 F.2d at 193-94).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory

presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326. General statements that the petitioner was denied a "fair trial" and "due process" are not sufficient to put state courts on notice of a specific federal constitutional claim in the absence of citation to case law employing federal constitutional analysis. *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984).

In this case, it is clear from the record that petitioner failed to fairly present to the state appellate courts any federal due process claim stemming from the error alleged in Ground One of the petition. In both his brief on appeal to the Ohio Court of Appeals and his memorandum in support of jurisdiction to the Supreme Court of Ohio, petitioner relied solely on the state supreme court's decision in *State v. Doran,* 449 N.E.2d 1295 (Ohio 1983), which established the standards and burden of proof governing the defense of entrapment in Ohio, and state cases following *Doran.* (*See* Doc. 11, Ex. 6, pp. 15-18; Ex. 12, pp. 7-10). Petitioner did not even mention in general terms that due process or fair trial concerns were implicated, and indeed in *Doran* itself, the Supreme Court of Ohio expressly pointed out that "defining the entrapment defense . . . does not implicate federal constitutional principles." *Doran,* 449 N.E.2d at 1298. Therefore, the only legal theories presented to and considered by the state appellate courts in this case were predicated entirely on state law.[5]

By thus failing to provide the Ohio courts with an opportunity to correct any error of constitutional dimension which may have arisen from the trial court's refusal to instruct the jury on entrapment, petitioner has waived such claim for purposes of federal habeas review in the absence of any showing by him of "cause" for his default and actual prejudice as a result of the alleged error, or that failure to consider the constitutional claim will result in a "fundamental miscarriage of

---

[5] A state appellate court deciding whether a trial court abused its discretion or otherwise committed prejudicial error under state law faces a different legal question than a state court deciding whether such error amounted to a constitutional due process violation. *Petrucelli,* 735 F.2d at 690 (citing *Steele v. Taylor,* 684 F.2d 1193, 1206 (6th Cir. 1982), *cert. denied,* 460 U.S. 1053 (1983)). In this case, the Ohio Court of Appeals was the only state appellate court that issued a reasoned decision addressing petitioner's claim on the merits. Because the court was not made aware of any constitutional concerns, it addressed and determined the issues as argued by petitioner, solely in terms of state law – *i.e.*, concluding that the trial court did not abuse its discretion or err in its application of *Doran* in determining that an entrapment instruction was not warranted for the receiving stolen property, money laundering, and engaging in a pattern of corrupt activity charges. (*See* Doc. 11, Ex. 10, pp. 5-10).

justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas corpus relief based on his claim in Ground One challenging the trial court's failure to instruct the jury on entrapment, because: (1) to the extent petitioner alleges the trial court erred under state law in refusing to give the instruction, his claim is not cognizable in this federal habeas proceeding; and (2) petitioner has waived any claim of federal constitutional error due to his procedural default in failing to fairly present the federal issue to the state courts.[6]

### B. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Two Challenging The Sufficiency Of Evidence Supporting His Convictions For Receiving Stolen Property

In Ground Two of the petition, petitioner contends that he is entitled to habeas relief to the extent that his receiving stolen property convictions, which resulted in the imposition of prison terms totaling one (1) year, are not supported by sufficient evidence. (Doc. 2, "Memorandum In Support," pp. 4-5). The charges underlying petitioner's convictions arose when petitioner purchased two loveseats delivered to his home by undercover agent, Dan Schweitzer, with the first purchase occurring on May 19, 2005 and the second on June 17, 2005. (*See* Doc. 11, Ex. 1).

In this case, the Ohio Court of Appeals was the only state court to address the merits of petitioner's claim challenging these convictions. Petitioner presented the claim as a state-law issue to that court by arguing that the verdicts of guilt were

---

[6] Even assuming, *arguendo,* petitioner "fairly presented" the claim alleged in Ground One as a federal constitutional issue to the Ohio courts, such claim lacks merit. Upon review of the trial transcript, the undersigned concludes that the state courts reasonably found from the evidence introduced at trial that petitioner exhibited a predisposition to commit the crimes charged in Counts 1-6 and 8 of the indictment. The Ohio Court of Appeals thoughtfully and thoroughly examined the trial record in evaluating the merits of petitioner's state-law claim. The undersigned is persuaded by the appellate court's well-reasoned analysis that petitioner "exhibited a predisposition to commit the crimes," and, therefore, the trial court did not abuse its discretion in finding "there is no evidence of entrapment for [the receiving stolen property, money laundering and engaging in a corrupt activity] counts, let alone a preponderance of the evidence." (*See* Doc. 11, Ex. 10, pp. 7-10; Ex. 18, Tr. 440).

against the manifest weight of the evidence.[7]  Utilizing the standard of review followed in Ohio for evaluating "manifest weight of the evidence" claims, the court overruled the assignment of error; in so ruling, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[8] and reasoned as follows:

R.C. 2913.51, states in pertinent part. . .:

"A) No person, shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense.

"B) It is not a defense to a charge of receiving stolen property in violation of this section that the property was obtained by means other than through the commission of a theft offense if the property was explicitly represented to the accused person as being obtained through the commission of a theft offense."

"In a case where goods are not actually obtained by theft, the issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of 'explicit representation.'" . . .  "Absent an admission by a defendant, the question of whether there was reasonable cause for defendant to know if an item was stolen can only be shown by circumstantial evidence." . . .

Appellant argues that the loveseats were not "explicitly" respresented to him as stolen and, therefore, his conviction is against the manifest weight of the evidence.  The jury was required to find that appellant had "reasonable cause to believe that the property had been obtained through the commission of a theft offense."  R.C. 2913.51(A).  We

---

[7]  In contrast to a state-law "manifest weight of the evidence" claim, which is not cognizable in this proceeding, *see supra* p. 6, a claim challenging the sufficiency of evidence involves a different standard of review and raises a due process issue which is subject to review on the merits herein.  *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), *superseded by state constitutional amendment on other grounds, State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

[8]  *See supra* p. 2 n.2.

find the jury did not clearly lose its way in finding appellant guilty of receiving stolen property. The loveseats still had tags indicating a price that was significantly more than appellant paid for them. The informant told appellant that Det. Schweitzer was "the guy who can get you whatever you need." Det. Schweitzer told appellant that he got the loveseats because he had a friend "on the inside" at a furniture store and that he took the loveseat "right off the back of a truck." Det. Schweitzer made numerous statements that the loveseats were "hot." Det. Schweitzer admitted that it would be hard to get appellant a black loveseat because it was a "hot" color. When he delivered appellant the second loveseat, Det. Schweitzer stated that "[it] is so hot, that it should be burning," and that "it's hotter than dog shit." Det. Schweitzer testified that the first time he used the term "hot," he meant "popular," but in reference to the second loveseat, Det. Schweitzer explained that he used "hot" to mean "stolen."

Whether the property was explicitly represented as stolen is a question for the jury to decide. Based on the evidence presented in this case, and the instructions on the law, the jury determined that appellant was guilty of receiving stolen property. We hold that the verdict was not against the manifest weight of the evidence.

(Doc. 11, Ex. 10, pp. 11-12) (state case citations omitted).

The standard of review established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979), for assessing the merits of sufficiency of evidence claims governs the resolution of the federal due process issue raised by petitioner in the instant petition. The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). Therefore, in contrast to the state-law standard applicable to "manifest weight of the evidence" claims, when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas

corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Here, the Ohio Court of Appeals recognized that in cases such as this where the items purchased by the accused were not actually obtained through the commission of a theft offense, the "issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of 'explicit respresentation,'" which is necessary to establish criminal culpability under Ohio Rev. Code § 2913.51(B). (*See* Doc. 11, Ex. 10, p. 11) (citing *State v. Awad,* 843 N.E.2d 201, 203 (Ohio Ct. App. 2005)).

In *Awad,* which appears to be the only other analogous Ohio appellate court decision addressing the issue at hand, the court stated:

> With the amendment of R.C. 2913.51(B) in 1999, the legislature, in effect, put its blessing on covert sting operations such as the one employed in this case. In a case in which the goods are not actually obtained by theft [but rather provided by the task force and in the possession of the police department], the issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of an "explicit representation." So a careful reading of the record is necessary to determine whether [the defendant] could have been held criminally responsible for the purchase of the purported stolen property.

*Awad,* 843 N.E.2d at 203.

In *Awad,* the court examined the trial testimony and determined from the

following evidence that § 2913.51(B)'s "express representation" requirement was satisfied and that the trier of fact could reasonably infer that "Awad knew or had reasonable cause to believe that the [items] were stolen:" the undercover officer's use of the word "steal" in certain conversations with Awad; Awad's questions during those conversations showing that he understood the meaning of the word "steal;" and evidence "that in each transaction, Awad paid less than half the retail value of the items." *See id.* at 203-05.

In so holding, the court pointed out that "although Ohio courts have yet to interpret R.C. 2913.51(B) or to comment on the extent of the evidence necessary to establish an explicit representation as contemplated by that division, the Texas courts have spoken on a Texas statute similar in content to its Ohio counterpart." *Id.* at 204. Specifically, the court in *Awad* referred to a Texas appellate court decision holding that "'slang dialogue' was sufficient proof of a representation that goods were stolen." *Id.*[9]

In this case, unlike *Awad,* it appears from the record that Detective Schweitzer did not use the word "steal" in his conversations with petitioner. The court below nevertheless found that based on all the evidence surrounding the undercover operation and the parties' various conversations, the jury could find that the loveseats were "explicitly represented" to petitioner as having been obtained through the commission of a theft offense. Upon careful review of the trial transcript, the undersigned similarly concludes that sufficient evidence was presented to support the reasonable inference that an explicit representation was made to petitioner that the loveseats were stolen.

First, a rational juror could infer from evidence presented at trial regarding the substance of the initial May 10, 2005 meeting between Schweitzer and petitioner that petitioner was made aware then that the undercover agent "dealt in stolen property" (*see* Doc. 11, Ex. 18, Tr. 125-26), and that it was this representation of Schweitzer which caused petitioner to continue meeting with him. Specifically, at that meeting, where the informant introduced Schweitzer to

---

[9] The court in *Awad* went on to find that "[i]n the case sub judice, it is not necessary to go to th[e] lengths [employed in the Texas case] to determine the purported status of the goods that were offered for sale." *Awad,* 843 N.E.2d at 204. The court determined that because "'[s]tealing' is clearly a necessary condition precedent for goods to become 'stolen,'" the trier of fact "could reasoanbly have inferred from the officer's use of the word 'steal' that Awad was expressly put on notice that the [items] were purportedly stolen goods." *Id.* at 204-05.

petitioner as "the guy, if you need anything, let him know and he can get it for you," many items of interest to petitioner were discussed, including a Harley-Davidson "Night Train" which petitioner ultimately concluded would not work because "they have a VIN on them and ... would have to be matched up." (*See id.,* Tr. 52-53, 130).

Second, the evidence surrounding the delivery and purchase of the first loveseat on May 19, 2005 supports a reasonable inference that the property was "explicitly represented" as having been stolen. As the Ohio Court of Appeals pointed out, a "red flag" had to have been raised for petitioner given that he purchased the loveseat, which was delivered to him "brand new . . . still wrapped in plastic" with a price tag of $1,164, for a mere $200.[10] (*See id.,* Tr. 55, 57). Schweitzer recalled petitioner specifically asking at that time "if I got it off the back of a truck and I advised no, that I had a person on the inside at a warehouse that would take the couch right off the back, at the warehouse." (*Id.,* Tr. 67). Moreover, at that meeting, Schweitzer also discussed another possible purchase opportunity for petitioner involving an RTV and tractor, which Schweitzer advised "needed to [be] moved" because the items had been "stolen" six months earlier. (*Id.,* 59).[11]

Schweitzer conceded on cross-examination that he did not use the word "stolen" or "hot" in discussing the purchase of the first loveseat with petitioner. (*Id.,* Tr. 136). However, the undersigned concludes that a rational juror could infer from all the circumstances surrounding the May 19, 2005 transaction, particularly when viewed in conjunction with representations made at Schweitzer's initial meeting with petitioner on May 10, 2005, that petitioner was expressly placed on notice that the loveseat purchased on May 19, 2005 was illegally obtained.

Finally, the evidence surrounding petitioner's June 17, 2005 purchase of a

---

[10] It is noted that, in contrast, the Ohio Court of Appeals found on direct appeal that the loveseat delivered to petitioner had a price tag of $1155. (*See* Doc. 11, Ex. 10, p. 2). However, on close review of the transcript, it appears that the *actual* price of the loveseat as purchased by the police department for the sting operation was $1155 marked down to $949, and further discounted to a final price of $550. (*See id.,* Tr. 56-57). When the loveseat was delivered to petitioner, however, the tag attached to loveseat stated the price for the loveseat was $1164. (*Id.,* Tr. 55).

[11] Apparently, petitioner offered $1000 to Schweitzer for the RTV, but the offer was declined. (*See* Doc. 11, Ex. 18, Tr. 59).

second loveseat from Schweitzer supports a reasonable inference of an "explicit representation" to petitioner that, like the first loveseat, the second loveseat was stolen. Schweitzer testified at trial that on May 27, 2005, he responded to petitioner's request for another loveseat by informing petitioner he had "talked to the guy that I had on the inside and that he was not wanting me to get the exact same color." (*Id.,* Tr. 72). A conversation ensued, which indicates that petitioner understood the loveseats to be stolen. Specifically, Schweitzer testified:

> Mr. Strunk advised that he thought that was odd, because he thought black leather would be a common color and would be no problem. Mr. Strunk then advised that your guy knows what's best. We don't want to get anybody in trouble, so, you know, whatever he can get....

(*Id.*). When counsel next asked "what was your take on the comment by the defendant that he didn't want to get anybody in trouble?," Schweitzer elaborated:

> It was that he knew they were stolen loveseats and that somebody was going to have to account for them. I said something about the inventory and something missing and that if we stole another one the exact same color, the inventory would be messed up and he said we don't want to get anybody in trouble. He knows the store and he knows what he can do as far as taking them out the back.

(*Id.,* Tr. 72-73).

When the second loveseat was delivered to petitioner's home on June 17, 2005, petitioner again was presented with a "wrapped . . . brand new loveseat" with a price tag of $1169, which he bought for only $300. (*Id.,* Tr. 88-89). Schweitzer testified that when he showed the loveseat to petitioner and his wife, petitioner's wife "advised, [']it's straight off the back of the truck[,'] and I advised, let me see exactly how I said it, 'the mother fucker is so hot, excuse me, that it should be burning. It's hotter than dog shit.'" (*Id.,* Tr. 88).

Schweitzer testified that he used the word "hot" to mean that the loveseat was "stolen." (*See id.,* Tr. 190-91). In contrast, in his prior conversation on May 27 with petitioner, he referred to a black loveseat as a "hot item" to connote that it was a "popular item." (*Id.,* Tr. 184). Certainly, a juror could reasonably infer that the term "hot" meant exactly what Schweitzer intended in the two very different contexts – *i.e.*, as "popular" when Schweitzer was referring to a black loveseat that

would be missed if petitioner were to steal another one from the warehouse inventory, and as "stolen" when Schweitzer was responding to a statement by petitioner's wife that the item appeared to have come "straight off the back of the truck."

In any event, there is corroborating evidence in the record to support the conclusion that sufficiently explicit representations were made to petitioner to satisfy Ohio Rev. Code § 2913.51(B), as petitioner admitted in a statement to the police officer who interviewed him on his arrest that he believed the loveseats were obtained based on a connection Schweitzer had in a furniture store; that he recalled "comments" made such as "fell off the back of a truck, hotter than a fire cracker;" and that he thought it a "good possibility" the items were stolen. (*Id.,* Tr. 268-69, 282).

Accordingly, in sum, when viewing all the evidence presented at trial regarding petitioner's conversations and dealings with Schweitzer from May 10 through June 17, 2005 in the light most favorable to the prosecution, the undersigned concludes that a rational juror could infer that "explicit representations" were made to petitioner that the loveseats purchased by him on May 19 and June 17, 2005 were stolen. A rational juror also could find that petitioner knew or had reasonable cause to believe that the loveseats were stolen for purposes of establishing his guilt for receiving stolen property under Ohio Rev. Code § 2913.51(A) as charged in Counts 2 and 3 of the indictment. Therefore, petitioner is not entitled to relief based on his claim alleged in Ground Two of the petition challenging the sufficiency of evidence with respect to those counts.

### C. Petitioner Is Not Entitled To Habeas Relief Based On The Claim Alleged In Ground Three Of Vindictive Sentencing

In Ground Three of the petition, petitioner claims that the trial court improperly punished him for exercising his right to a jury trial by imposing a "very harsh" sentence. (Doc. 2, "Memorandum In Support," pp. 5-7).

The Ohio Court of Appeals, which was the only state court to issue a reasoned opinion rejecting the claim on the merits, ruled in pertinent part as follows:

> . . . .Appellant claims that the "very harsh sentence" imposed by the trial court was an abuse of discretion because the judge indicated a

great deal of impatience with the duration of the trial and the judge stated that appellant has not taken responsibility for the crimes. At sentencing, appellant stated, "I would like to tell you how sorry I am and how I made a mistake and how it will never happen again." The trial judge replied, "Leniency is for those who take responsibility. You have taken no responsibility."

Clearly a criminal defendant cannot be punished for exercising his constitutional right to trial. . . . This court reviews a trial court's imposition of a sentence for an abuse of discretion. . . . We also note that where a sentence is within the statutory limits, we cannot hold that the trial court abused its discretion by imposing a more severe sentence. . . .

After a thorough review of the record, we cannot conclude the trial court abused its discretion in sentencing appellant. Appellant's sentence was within the statutory limit. While it is true that appellant made a statement of apology for his conduct, it is equally true that the trial court considered appellant's statement of remorse and found it to be less than genuine. A trial court may consider an offender's showing of remorse, but the court is not required to accept such statement as true and may comment accordingly. . . . In the instant matter, the record is clear that the trial court considered Appellant's statement and rejected it, as is within its sound discretion. . . .

(*Id.,* Ex. 10, p. 13) (citations to state cases omitted).

"It is beyond debate that a defendant cannot be punished at sentencing for exercising his constitutional right to plead not guilty and to stand trial, 'no matter how overwhelming the evidence of his guilt.'" *Gossard v. Bell,* No. 05-40267, 2006 WL 2460768, at *24 (E.D. Mich. Aug. 23, 2006) (unpublished) (quoting *United States v. Derrick,* 519 F.2d 1, 3 (6th Cir. 1975)); *see also Harris v. Missouri,* 960 F.2d 738, 741 (8th Cir.) (citing *United States v. Carter,* 804 F.2d 508, 513 (9th Cir. 1986), and *North Carolina v. Pearce,* 395 U.S. 711, 723-24 (1969)), *cert. denied,* 506 U.S. 921 (1992). "[D]ue process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." *Wasman v. United States,* 468 U.S. 559, 568 (1984). In a case such as this, where it cannot reasonably be presumed that a "sentence imposed after trial was

motivated by unconstitutional vindictiveness," the defendant bears the burden of proving actual vindictiveness in the sentencing decision. *Gossard, supra,* 2006 WL 2460768, at *24 (citing *Alabama v. Smith,* 490 U.S. 794, 799 (1989)); *see also Wasman,* 468 U.S. at 569.[12]

Here, petitioner is unable to show that the sentences themselves constitute evidence of actual vindictiveness on the part of the trial judge. The sentences imposed on petitioner fell within the ranges prescribed by statute. Indeed, as respondent has noted in the return of writ, petitioner did not receive the maximum sentence on any of his convictions, but rather received the "shortest possible sentence of six months for receiving stolen property," as well as "midrange" sentences of three years for the money laundering offenses, which carried a maximum sentence of five years, and of five years for the engaging in corrupt activity offense, which carried a maximum sentence of eight years. (*See* Doc. 11, Brief, p. 16 n.1).

In addition, the imposition of consecutive sentences for the multiple offenses, standing alone, is insufficient to establish actual vindictiveness. *Cf. Taylor v. Kincheloe,* 920 F.2d 599, 606-08 (9th Cir. 1990) (finding no evidence in the record to support a theory of actual vindictiveness by the trial judge, who imposed consecutive life sentences when petitioner was convicted by a jury on two counts of first-degree murder after his guilty plea to first and second-degree murder, which resulted in concurrent life terms, was vacated); *Taplin v. Rabideau,* No. 9:04-CV-935 (FJS/RFT), 2008 WL 2559374, at *17 (N.D.N.Y June 23, 2008) (unpublished) (and cases cited therein) (holding that the maximum consecutive sentences, which were properly imposed under state law within the statutory range for the separate criminal offenses, "cannot afford Petitioner relief").[13]

---

[12] In *Pearce,* 395 U.S. at 724, the Supreme Court held that a presumption arises that a sentence is vindictive in cases where "the same judge imposes a higher sentence on retrial after the defendant successfully appeals the first conviction." *See Gossard, supra,* 2006 WL 2460768, at *24. This presumption, however, does not apply when the first sentence was based upon a guilty plea and the second sentence follows a trial, or when a defendant is sentenced after conviction at trial following his decision to reject a plea bargain and instead enter a not-guilty plea. *Id.* (citing *Smith,* 490 U.S. at 795, and *Williams v. Jones,* 231 F.Supp.2d 586 (E.D. Mich. 2002)).

[13] In addition, in *Rabideau, supra,* 2008 WL 2559374, at *17, the court stated: "The fact that the court, following conviction, imposed the maximum sentence does not, in itself, demonstrate actual vindictiveness."

The undersigned has thoroughly reviewed both the trial and sentencing transcripts, and can find no evidence even remotely suggesting retaliation or vindictiveness by the trial court against petitioner for exercising his right to a jury trial. Petitioner appears to insinuate that the trial court's reference at the sentencing hearing to his failure to "take responsibility," after he had apologized for his "mistake," suggests that the sentence was based on his refusal to enter a guilty plea. (*See* Doc. 11, Ex. 19, Tr. 4, 8). However, the court's comments, made at a much later point in the hearing after witnesses testified on petitioner's behalf regarding his "good" character, are simply too vague and tenuous to establish that there was any such improper motive underlying the sentencing decision. Indeed, the remarks could reasonably be construed as reflecting the concern, which the court in fact stated, that petitioner was "sorry for engaging in this behavior" only because he "got caught and [was] going to prison." (*Id.,* Tr. 8).

There is no evidence in the record that any pressure was exerted on petitioner to plead guilty and forego a trial or that the court was upset or had any problems about having to proceed to trial before a jury. Indeed, there is no evidence in the record to trigger any concern of partiality or improper bias against petitioner by the court in presiding over the trial or deciding petitioner's sentence.

Accordingly, the undersigned concludes that petitioner is unable to demonstrate that the trial court was motivated by actual vindictiveness in sentencing him to consecutive, non-maximum terms of imprisonment totaling 10 years based on his convictions on two counts of receiving stolen property and three counts of money laundering. Petitioner, therefore, is not entitled to habeas relief based on the claim alleged in Ground Three of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground One of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim in that ground

for relief.  A certificate of appealability also should not issue with respect to the remaining claims alleged in Grounds Two and Three of the petition, which are addressed on the merits hererin, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims or that the issues presented are "adequate to deserve encouragement to proceed further."  *See id.* at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: __12/16/08____                        _s/Timothy S. Black_____
    cbc                                                     Timothy S. Black
                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

James B. Strunk,
      Petitioner

    vs                           Case No. 1:07cv862
                                   (Spiegel, S.J.; Black, M.J.)

Warden, Chillicothe Correctional
Institution,
      Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir. 1981).